We are privileged to have with us today Judge Banaski's class at Dickinson Law School at Penn State University. And what course is this that you're teaching? This is a course called Electronic Evidence. And I know I saw some people in the galley looking and saying, where are they? Well, they are appearing here remotely, or we're appearing to them remotely. They are in Carlisle and University Park, respectively, because I have students in both locations. And we did open up the oral argument to students outside my class, so I'm hopeful that there are other students as well, who will be learning from some exceptional professionals here today in the presentation of oral arguments. I'll include you guys. So thank you very much. I want to commend Greg Kane and the entire staff, Eric Hernandez and the entire staff, here at the Third Circuit for all the work they did. And also I want to extend my appreciation to Tom Dennis and the remarkable staff at Penn State Dickinson for the work they've done to make sure that we can broadcast these oral arguments to the students. Thank you. You're very welcome. Glad to have them. And we'll call our first case this morning. It's Southern Track and Pump, Inc. v. Terex Corporation, number 13-4279. Ms. Hopman, is that right? And Mr. Walsh. Yes, sir. Good morning. My name is Virginia Hopman. I represent Terex as the appellant here. And with the court's permission, I'd like to reserve five minutes of my time for rebuttal. I just want to ask one question at the outset. The impression I got from your brief initially, and certainly from the amicus brief that was filed supporting your position, parenthetically, amicus curiae means friend of the court, but 95% of the time it's always a friend of the side as opposed to the court. That's okay. It looks like this Delaware statute is, but with the exception of West Virginia, the only dealer statute in the country that's like the one we had before us. Is that correct? I don't believe that's correct. Well, what other states have it? And I look at it, most states have, they either exempt the used equipment from the equation, or from the purview of the statute, or they provide a provision as to how you pay for used equipment that you need to repurchase under the dealer statute. And I only can find, we only can find, Delaware and West Virginia that doesn't deal with either of these ways. It just leaves it blank. You must purchase all inventory, but it doesn't tell you what the purchase price is for used equipment. I believe there's a footnote in my reply brief. It's on page 34, I believe. In the reply brief, which I don't have with me right now. I haven't looked at your initial brief. I believe there's also, like Rhode Island, there's several statutes that have language that is like the Delaware statute. There are also several statutes that do not. You mean language that omits completely? Anything relating to there's no exemption put in like 2724, and there's no provision put in 2723 that says here's what you do with regard to the purchase price for used equipment. Actually, I think the statute, when you look at the statute, the obligation itself is provided in 2722. And 2722 limits the obligation to repurchase to inventory the repurchase that's been provided in this subchapter. But my point is, this isn't as far reaching as I was initially perceiving. Isn't that correct? This is really indigenous to Delaware, isn't it? No, I don't believe it is, because I believe that the exemptions were characterized below. Section 2324 was characterized below as exemptions to the all inventory phrase. And if you look at the exemptions, the exemptions do not distinguish between used and. . . I think what Judge Amber is getting at is the first statement is 42 states have this. This is a really important thing. And then when you look at it more closely, you have something pretty unique here in Delaware. I don't believe it is. I mean, it's only unique if you view the statute from the particular lens that SCP argues and the district court did as well. Because as I was saying, Section 2424 itself is not exemptions that deal with certain used repair parts. Each of those exemptions deal with repair parts that otherwise are new. So it's not a statute. There are several statutes that don't include the exemptions. They may not use. . . Right. We found just preliminarily, just looking for an hour, 29 states that specifically exempt used equipment. And in that hour search, we also found states that include a pricing term for equipment that is not new and unused. And we found five states. Right. With respect to the new and unused, however, those states are generally exempting demo equipment or equipment that can be sold with a certain amount of reconditioning as new. And what this statute does that all the other statutes do is it focuses on a reasonable way of dealing with the repurchase of inventory at the termination of a dealership. Well, the question is, what was on the minds. . . Delaware is different than most states. Do you agree with that? I think there's about four patterns. I mean, I've read all of the statutes in the different states. And I believe there's about four patterns of statutory language. And Delaware fits within one. I believe that. . . And it's a minority of the 42. Well, I think with. . . Yes, I would agree with that because I think when you divide 42 by four, you get. . . I mean, each one has maybe 10 or less. Who proposed this statute initially, the Uniform Commissioners. . . Commissioners on Uniform State Laws or what? I don't believe it. I don't believe there's a Uniform Commission that deals with this particular issue. It appears as though there are certain versions or certain language, all of which are intending to accomplish basically the same purpose, which when you're looking at those statutes that don't look at fault, that don't look at termination where a good cause is required, but they're looking at termination at the end of the dealership by either party for any reason. And in that circumstance, all of these statutes, however, whichever model they chose for their language, they essentially are looking for a commercially reasonable way to wind up the dealership. And a commercially reasonable way essentially puts the product, the inventory, in the hands of the party who's best able to efficiently deal with it. And that's the purpose and policy that underlines each of these statutes regardless of. . . But our task here is to interpret this particular statute, and we are constrained to do so by the particular language the Delaware legislature used. So how can our decision influence outcomes in other states when we're dealing with language that appears to be sui generis? Again, I don't believe it's sui generis to Delaware. Besides Delaware and West Virginia, what other states have something identical or essentially identical to what Delaware has? That is, it omits exemption for used equipment, and it omits a pricing term for equipment that is not new and unused. I believe those states would be Rhode Island, New Hampshire. I think Connecticut did it before it was. . . I have Rhode Island as a state that specifically exempts. Well, I think, back to your question, Judge Vineski, well, I think that in order to interpret a statute, you have to give meaning to the plain language of all the pertinent language of the statute. That doesn't help you, does it? I believe it does, because I believe if you look at Section 2722, the legislature provides the repurchase obligation. And the repurchase obligation is an obligation to repurchase as provided in the statute. And the statute provides in 2723, the supplier shall repurchase from the dealer within 90 days all inventory previously purchased from the supplier that remains unsold. Right, but in the context of that statute, cherry-picking the word all out and giving it a meaning, all, it has to be modified by all inventory subject to repurchase under the statute. That means you have to look both to the definition of inventory and the definitional provision, but you also have to look to whether or not the legislature has provided. . . All inventory previously purchased from the supplier that remains unsold. It doesn't even say all inventory that's new, all inventory that's not leased, or all inventory that's not unused, whatever. It just says all inventory. If you're a textualist, then you've got a . . . I realize what the amicus brief argues, which doesn't make a whole lot of sense to me. The plain meaning doesn't support your position. But I believe it does, because I believe the word all in this context means all inventory subject to repurchase. If you look at what the legislature did here, if you look at Section 2723A, 2723C, and 2723D, in those cases the legislature is either using the word be or the word all, but in each to modify inventory. But in each case they're saying that all inventory subject to repurchase, whether it's a repair part or whether it is equipment, has to meet the conditions in A, C, and E. Is there any . . . let's assume that besides West Virginia that there are Connecticut and . . . New Hampshire. New Hampshire, I guess. States that supposedly support your position. Are there any decisions from any courts in any of those states that interpret the issues we have before us today? This particular issue with respect to the meaning of the repurchase obligation in 2423 has not been construed by courts in one of those states. However, the availability of the remedy has been. And with respect to the availability of the remedy, the language used in Delaware specifically conditions that first repurchase remedy on the showing that there was a failure or refusal to repurchase. And in that circumstance, Your Honor, the judge incorrectly refused to allow evidence that the inventory could not be returned. Marina, why don't you add five more minutes on, please? Go ahead. Do you want me to keep going? So with respect to that provision, the court ignored the plain statutory language because in its view a finding of liability at summary judgment was sufficient. And there are . . . So just give us your view. How should we read the statute then in your view? Thank you, Your Honor. I think the statute should be read to encompass the, to require the repurchase of only new, unused, and undamaged equipment. And that's because that is the only kind of equipment for which the legislature has actually provided terms for repurchase. Do you want to run that by me again? Go ahead. It should only include new, used, and undamaged inventory because that's the only kind of inventory for which the legislature has actually provided terms. Provided terms for repurchase. For repurchase. There are no repurchase terms. Actually, it's silent. It is silent. So silence means you win. Is that what you're saying? Well, because the limitation is that you only repurchase as provided in the statute. I mean, maybe silence here just means it's badly drafted. There could always be improvements made when one is drafting legislation, Your Honor. This is like sausage, I understand. But I think when you look at the statute itself, there's no provision. There's no term. What is the monetary consequence of your interpretation that the statute covers in this particular case? In this particular case, our position is that at the liability stage, the judge-based liability on TAREX is refusal to repurchase used and damaged equipment. So that liability phase ruling should be overturned. With respect to damages, there are two remedies provided in the statute. The first remedy is a forced repurchase remedy. And in order to obtain that forced repurchase remedy at the remedy price, which is in 2727A, the plaintiff has to prove at damages that there was a failure or refusal to repurchase during the statutory period. The 90-day period. The 90-day period is the period in which it must be returned. And then after return, the statute gives 60 days for full payment. Right. So it was returned in this case before the repo? It was not returned in this case. And there is a requirement. When did the repossession take place? The repossession took place, I believe, around 60 days after termination. So what's the legal significance of that in this case? I mean, are you off the hook on that? Because GE came in to repossess? Well, what happened was, given the way the court construed the statute, not only did he expand the liability, which we've already talked about, but in the remedy section, he indicated that there was no requirement for the repurchase remedy to demonstrate return of the equipment. And that's wrong for two reasons. First, the statutory language itself requires for that remedy that the same elements be proved. And repurchase itself requires the return of equipment. The monetary consequence in answer to your question, Judge Manaske, is that the dealer is not left with nothing. If you can't make that showing, then you get to recover your actual loss that results from the violation. And in terms of dollars here, we've never had the opportunity for that to be addressed. That would have to be addressed. Maybe it's chicken or egg, but I'm looking at 2723. It says that suppliers shall repurchase from the dealer within 90 days after termination of the contract all inventory previously purchased from the supplier that remains unsold on the date of the termination. The C says the inventory shall be returned FOB to the dealership. When is that? Before or after the payment takes place? Or at the same time? That is actually within the statutory 90 days. The 90 days gives you time. When? Which comes first, or is it the same time? The payment and the return. No, if you look at Section 2723D, the full repurchase price is paid 60 days after receipt of the inventory. So the 90 days refers to the inspection, the certification as acceptable, and the return. After the return, at whatever phase it occurs to, even if it's day 90. Wait a minute. The D is supplier shall pay the full repurchase amount to the dealer not later than 60 days afterwards. Is it receipt? Yes. Of the inventory? That's after the supplier receives it, the dealer returns it. Okay. So let's go back to Judge Chigares' question. What effect does GE's repo have on Terex's repurchase obligation? With respect to the repurchase obligation, the fact that GE repossessed the equipment means that STP cannot return it during the statutory period. So if we rewound the clock and looked back to the liability question with respect to the new equipment, I think the last thing that happened before the repossession was Terex asked STP to identify which is new and which was rental. STP didn't do so, so Terex offered a fair value for nine, and then it was repossessed. Is there any cases that deal with repos prior to payment and what effect that has under a dealer statute? I did not find any that dealt specifically with repossession. There were several cases, however, that dealt with a dealer who had faced a supplier that refused to repurchase anything. And so the dealer, in order to mitigate, sold. In that case, it was repair parts, not a big piece of equipment. Sold the repair parts. And in each case, the court was on the one hand sympathetic with the fact that the dealer was trying to mitigate, but on the other hand indicated you can't require repurchase if there's no return. Repurchase inherently involves the return of the equipment, and if you can't return it, even if you had a good reason or even if it was for some reason the refusal that caused you to sell it to mitigate, you still made a different election under the statute, so there's no liability. And that's the Kaiser shot case, the town and country case. There's also a recent case that came down this summer in North Carolina that deals with repair parts in a somewhat different context, but it also looks to the notion that you have to have return and title passed back to the supplier. In light of all of these question marks with regard to very few cases having decided a statute that's distinctly in the minority and this affects Delaware, it causes you to just ask the question, why are you here? Why aren't you before the Delaware courts? Or whoever brought this, why wasn't this brought in Delaware? Well, I think in terms of what was the initial litigation strategy, I can't answer that question, but I do understand that it was initially removed, and I think it may have had to do with diversity purposes. Why don't we just certify this to the Delaware Supreme Court and let them decide? Well, that is certainly an option that this court could take advantage of, because I think here Delaware itself, even if it's in the minority of statutes, this case, the only connection to this termination is that Terex is a Delaware corporation. This is a Florida termination. No, wait a minute. You chose Delaware law. Yeah. The agreement. Well, the contract did. That's what we call semi-significant, right? Well, that is. But the fact the contract is governed by Delaware law doesn't necessarily mean that the statute should apply to a transaction in Florida. I mean, I'm not saying it shouldn't apply. I'm saying that it's reaching out in this particular case. That's not today's issue. That's what we've got before us, and that's what you briefed, which is the right thing to do. Right. So I'm not going to get off on that trail. Right. I didn't mean to get off on a trip, Your Honor. I just meant to say that this statute, because there are an awful lot of Delaware dealerships that have contracts governed by Delaware law, that the Delaware law does have implications well beyond just the board of Delaware. Before you sit down, let me just get a couple facts here. The contract was terminated by STP. Yes. Was there a representative of Terex sent out to look at the equipment? There was eventually. What happened was – Eventually means when? How many days after? I think that was in July. Terex initially –  I think Terex requested to schedule the inspection at the beginning of July, which I believe would have been somewhere around 40 days after termination. How come so long? The reason for so long, if you look at the correspondence, Your Honor, is that initially STP had asked not to return all of its equipment, but to keep some equipment, refinance, and keep its rental business going. I mean, it's obvious that you wanted some of these, certainly the new equipment, because you repurchased that from GE ultimately, didn't you? Well, yes, because Terex is generally obliged under these statutes to repurchase new equipment, and it's generally in the interest of the supplier to do so because it helps avoid fire sales by dealers when they terminate dealerships. So the new equipment is something that Terex had said, identify the new and we'll repurchase it. And it took, I think – the correspondence is in the records, Your Honor, but I believe it was pretty much once a week parties were going back and forth with correspondence and they scheduled the inspection date, I think the beginning of July. They came and inspected sometime within the first two weeks of July. Terex made an offer. It still couldn't identify what was new based on the inspection, because if it's been on rental, even if it looks new, Terex can't sell it as new without running – because of fraud laws. So they made a good fake offer for nine pieces, and then the property was repurchased. How many pieces were there altogether? I think about 45. And how many of those were new and how many were leased and therefore used? The parties stipulated at summary judgment that seven were new. And 38 were not new? Had been leased out. Had been leased out. Okay. Now, when STP filed this, was it a declaratory judgment action? Was that correct? It was. It was. Why did you remove it? I wasn't part of that decision, but I think it was just basically because of diversity. No, I understand. That's the hook. But why did you remove it? I think because the trial attorneys in question were more familiar and comfortable with federal court. State court's pretty good in Delaware. Okay. I would agree. All right. Let's hear from Mr. Walsh. May it please the Court, good morning. Peter Walsh on behalf of the Plaintiff Appellee Southern Tract and Pump. And seated with me is my friend and colleague, Suzanne Holley, of the Berger Harris Firm, who I should note is a Dickinson grad. I have the – which is good. I have just a practical question at the outset. We adopt your proposed interpretation of this dealer statute, which has a hole in it with regard to whether used equipment is exempt and doesn't deal with under 2723 what to do with used equipment in terms of purchase price. How do we answer the important question of what a supplier needs to pay for used equipment? Well, I think the statutory scheme is set up such that if the dealer plays ball, so to speak, and purchases what it's supposed to for the price it's supposed to, and that is with respect to new, we know exactly what the price is. I think Judge Stark came up with a very rational, plain-sense reading of what happens with respect to new or rented equipment. Well, let's assume that for the moment they paid you for the seven pieces of new, and now you've got 38 pieces you're fighting about. What's the purchase price? The purchase price is what they negotiate. But what if you can't agree on a negotiation? Well, then I suppose there's recourse to the courts for the courts to decide what the purchase price is. Yes, but then that becomes draconian under 2727 because then they get whacked for not paying for depreciated value, but it looks like new value plus pay attorney's fees and all kinds of other things. That doesn't seem so fair if perhaps the used equipment provision doesn't apply to them. Well, again, I think Judge Stark came up with a rational reading. I think what's important to remember here, and this is in the summary judgment ruling, is that Tareks didn't comply with what they proposed. My question to you was assume for the moment that they did comply with respect to the seven pieces of new. For the 38 pieces of not new, what should they have paid? You said negotiated, but now I said assume that there's no agreement on what the price would be. What do you do? I think that's an issue left up to litigation or arbitration or some other mechanism as to. But it's not much of a negotiation. It seems that you could sit back and go, well, we want more, and if we don't agree then you're going to get hammered all different ways. Well, Your Honor, that's certainly a possibility, but I think other states would suggest that the price for use would have to be negotiated, and that's what this legislator, I suppose, could have said. They didn't. But I don't see any other way that you can come up with a price for rented or used equipment because each piece is going to be unique. Each piece is going to be subject to a certain number of hours. And by the way, I should mention that in this industry it's not uncommon that a dealer rents or leases equipment. In fact, in the distributorship agreement, which you'll find in the record, my client had an obligation to maximize, use best efforts to maximize renting and selling this equipment to get it out on the market to get the T.A.R.A.C.S. name known. To your knowledge, are there many transactions that adopt Delaware law for a dealer statute? I'm not aware of any, Your Honor, and I would like to go back and answer some questions. So this is, I think one of my colleagues said, sui generis. I believe that's right, Your Honor. And, again, I don't know that it necessarily helps to look at the other state statutes because, again, what you have to go on here is the plain language. A couple points on that, and I want to respond to the question about getting off the hook. I want to respond to the removal question. We filed a superior court. It was removed on diversity jurisdiction. Why not certify to the Supreme Court? We've been going at this since 2007, 2008. I think the Supreme Court of Delaware would come to the same rational, common sense, plain reading conclusion that Judge Clark did. He spent a lot of time with this. He looked at it very carefully. And I'd like to spend a minute going through the statute because I think where he ended up is where a rational, objective, reasonable person reading the statute would end up. Well, the first place to start maybe is with the synopsis to the statute, which is, you know, that short little one paragraph that you put in with the General Assembly, and they've always emphasized to keep it short. This is an act relating to contract agreements between dealers engaged in the business of retailing new construction, farm, industrial, and outdoor power equipment. Not new and used, new. That's correct, Your Honor. And our position is the fact that it's referenced to new does not mean that in a termination and repurchase situation that all the equipment has to be new. And I think you can discern that from the language of the statute itself. Well, it doesn't. I mean, it uses new. It could have not used new at all or said all. I think in referencing new, what they were trying to address is the type of commercial relationship that we're talking about here. This is like a car dealership where you have a fleet of inventory. It talks about dealers engaged in the business of retailing new equipment. This dealer engaged not only in the business of retailing new equipment, but also in leasing that equipment which made it not new. So, therefore, by their doing that, does that take it out of the purview, at least of the intent of what the General Assembly meant? I don't believe so, Your Honor. I think by describing it as selling equipment. Because the focus is on the retailer, right? That's correct. That's the dealer. And that's exactly what we've had. We had a dealership. And, again, I go back to the distributorship agreement. The nature of these contractual business relationships is the manufacturer, in this case supplier, wants to get the dealer to rent the equipment, to demo the equipment, to get it out there on the market so that people see it and use it. But that doesn't mean that what we had here was not a situation where my client was in the business of selling new equipment. In view of the fact that the overwhelming majority of the – I take it all the equipment was purchased new from Tariq's? You know, that's a good question. I don't know that it was necessarily new. There could have been hours on it. And I think it's common in this industry. It's like a car. When you buy a car, it's never zero on the mileage. In the construction industry, it's very common that you have some hours on the equipment, even if it's sold new from the manufacturer to the dealer. Let me just take a moment, though, and look at the language of the statute. I wanted to ask a follow-up question there, and that is the anticipation that the majority of the equipment actually would be leased by a dealer. Is that the norm in this particular industry when we're talking about heavy equipment? I think it varies from dealer to dealer. But it certainly – and, again, I go back to the distributorship agreement. There isn't any question that Tariq's understood that this dealer was going to lease equipment and demo equipment in an effort to sell it. Going back to the language of the statute, I think there's several provisions from which you come away with the same conclusion that Judge Stark did. First of all, he started with the definition of inventory. Certainly, if it was intended to exclude used or rented equipment, it could have said something other than what it does. It doesn't exclude. There's no carve-out for demo. There's a lot of textual arguments you can make. But, as I said, it doesn't appear that that is the intent of what the General Assembly did. And, also, it doesn't appear that there's anything in the statute that we can see that deals with the purchase price for used equipment. While other states in the big, far majority have considered it, Delaware appears not to. And I just can't figure – I cannot figure out why. Your Honor, we certainly recognize that. I think, you know, what did the legislature intend here? Hard to say. But I think, reading the language, what they didn't intend to do was carve out used equipment. And, again, how do you explain the synopsis? Well, the synopsis, I think, clearly uses the term new. But, again, let me – It talks about retailing new. Right. That's why I asked the question I asked in terms of the industry practice or dealership practice, because is the short-term leasing of this type of equipment part of the retailing effort? I believe it is. Again, part of what the manufacturer – You said the manufacturer wanted to get the name out there. The distributorship agreement contemplates that the equipment would be leased as well as sold. That's correct. That's correct. And that's how they get their equipment out onto the market. And it's very common for dealers, when they get equipment in, to get it out there and to get it used, and they do that through rental agreements. And, again, Terex knew that that was the way this worked. There is a little bit of a dispute about how many pieces are new. I don't recall that we stipulated. Terex's position was that it was – there were seven pieces of new. Although they purchased, what, eight from GE? I believe that's correct, Your Honor. And, again, I think another important point to remember here, which Judge Stark recognized in summary judgment was in offering to repurchase what they considered new, they did not comply with the statute. They did not offer the correct price. They offered less, and that was recognized. Even for the new? Even for the new. That's in his summary judgment opinion, which is in the record. The other point, just going back to the language of the statute, it would seem – I'm just looking at the consequences of what we're doing here. That your proposed reading of the statute, which obviously is not implausible, but it creates a perverse incentive for a dealer not to reach an agreement when negotiating a price at which a supplier must purchase used equipment. They could just say, not going to agree, not going to agree, not going to agree. You don't buy it all. They then go to court and say, okay, now 2727 kicks in, and you've got to pay the full new price plus attorney's fees, et cetera. Gotcha. That looks so good. Your Honor, the problem with that analysis is let's remember what the position of the dealer is when they're saying gotcha. They're in the position of my client. They can't pay their bills. They're desperate for money. They said to the manufacturer, hey, look, this equipment is going to get repossessed. I'm talking about when you're desperate for money, you might do desperate things, such as not reach an agreement with the idea that you can go to court because this statute is so quirky. Again, but I go back to the other point, which is how are you going to put into a statute what the price is for used or rented equipment unless there's some negotiation or some agreement. Obviously, if you're doing this as a class experiment, you would probably be, you'd say to counsel, you need to understand when you chose Delaware law, you don't have something dealing with the purchase price for used equipment. Therefore, you must put into your agreement, your contract, what that price would be if that ever kicks in. Obviously, it wasn't done here. So now you're left to a stat, to interpretation of a statute that is significantly different from others, has a hole in it, and the question is the statute doesn't necessarily supply the answer. Does common law supply the answer or what? The best argument you have going for you is, hey, my hook is that they didn't pay full dollar, didn't offer to pay full dollar for the new, therefore, they're stuck. We've got them under 2727, and we didn't have to be cute. They just didn't comply. I got it. But we're trying to think of how this applies to the next case. Yeah, and again, and I've suggested it before, I think the conclusion that Judge Stark re-concluded was that, looking at the statute, there was an inspection right as to whether it was, you know. Well, they said it came out within 40 days. Sure, sure, and again, that was to expect this. There was a lot of back and forth before that. Yeah, and I think it's commercially reasonable to conclude that in a case of rented or used equipment or damaged equipment, there has to be a negotiation. And I think another important, the industry here is, you know, there's Ritchie Brothers where this equipment went. There's a very robust secondary market for equipment. I mean, there are individuals whose job is, and we had some as experts in this case, who go out and look at equipment and determine what a fair price is for it once it's been used in the field. So it's not irrational or it doesn't leave some result or some fair resolution when the court says, well, with respect to used, damaged, or rented equipment, there should have been a negotiation. And again, in this case, there wasn't any offer to buy any of the rented or used equipment. Well, I believe that, again, they have an argument as to why, because the statute doesn't necessarily deal with it, nor apparently did the contract deal with it. But let me ask you the same question that I asked of Ms. Hoffman. Suppose a dealer terminates a dealership-distributorship agreement and its financing agent repos the inventory, sought to be returned before the repurchase period ends. Must the supplier still repurchase that inventory or pay the price even if there's nothing for it to recover? Well, I think it depends on the circumstances of the case. And the circumstances of the case here were that on May 21, Terex accepted the termination. They were put on notice on June 2 that this Delaware statute applied. It's a sophisticated, multibillion-dollar international company. I understand, but what happens if it's repoed? Well, if it's repoed, then they have found themselves in a position where they failed to comply with the statute. And in this case – Wait a minute. Go ahead. So what happens – I mean, let's assume they're still within the time period. So they're not – you can't say they failed to comply within the time period. And let's say the notice is given and 10 days later, GE repos it. Do they have to pay you, let's just say, even for the new equipment, anything? I think in that case they might have an argument that they shouldn't, that the time was not sufficient. They had 90 days. But, again, in this case, it was in – we were in the 50-ish day. They were – Still within the 90 days. Still within the 90 days. And you can find this in the record. At A284, what we said to them on July 14, which is, well, almost two months after the termination accepted by them, they had been told about GE, they had been told GE is going to possess. This is what we said to them on July 14, last line of our letter. However, if Terex fails to take action to resolve the situation prior to repossession by GE, ST expects Terex to reimburse it for any costs associated with the repossession or other costs claimed by GE. Yeah, I understand that. That's negotiating. Well, yeah. Basically, we were prepared to negotiate and attempted to negotiate, but said to them, you know, you don't have the luxury of the time. From your perspective, you're saying time is running out, folks. Yes. As I see my time is running out. Maria, why don't you add five more minutes? I mean, doesn't that result in a windfall to your client then? No, Your Honor, I don't think it results in a windfall. And let me address that argument which has been raised. First of all, it is in the record, and it was recognized by Judge Stark at the summary judgment, that my client ended up paying $1 million to GE after the equipment was sold to make up for the loan. Terex originally was paid about $4.5 million. This is back in 2007, 2008. So that money has been sitting with Terex. They've had $4.5 million. Now, they would come up and say, well, gee, you know, we had to pay recourse to GE. Well, the reason they paid recourse to GE was because they didn't use the money that was paid to them to come and repurchase the equipment. And GE repossessed somewhere in the 60-ish day, and they were required to pay recourse. But the money has been sitting there, $4 million or some. And, of course, they did buy back some of the equipment from GE. But the money has been sitting there. My client hasn't been sitting on any money. We're out over $1 million. As we explained to the district court, we didn't seek to put in other incidental compensatory damages because we recognize that if liability was established, 2728 provided the statutory remedy. But is that a windfall to our client? I don't think so. It's certainly not punitive. It's not punitive to have Terex essentially repay to my client what it was paid. That's not punitive. Is it a windfall? I don't think so. It's a statutory remedy. And I would also suggest that simply because it may exceed the actual out-of-pocket damages that we may have been able to put forth had we needed to, that doesn't make it a windfall. It's a statutory remedy. And, again, what I would impress upon the court is this is a case where Terex had every opportunity to come in and offer the price they were required to for the equipment that they conceded was new and, as Judge Stark suggested, negotiate with respect to the other equipment. And if their position was in the 50th day or whatever this was that, hey, we're not required to buy new or used, they could have paid what they were supposed to for the new and then perhaps brought in action, repurchase new and rented equipment. And we're not sure how that would play out, but that's not what happened. You said new or used. You meant new and used. Correct. What is your thoughts as to whether this issue should be certified to the Delaware Supreme Court? Besides the fact I realize it's not. Aside from the fact that we've been going at this for years and years, my client's out a million, and nobody can contest that. Again, I think the Supreme Court would struggle with the very issues that each of your honors has struggled with, which is why isn't there an attempt at least to address this question? But I think our Supreme Court would conclude the same as Judge Stark concluded, that the better plain reading is this was not an intent to exclude rented or used equipment given the nature of this market. And, again, their position, I would ask the Court to go back and look at 2323B. It is a price term. It starts with 23 or 2723? I'm sorry. It's 2723B. Yes, 2723. You'll see that the repurchase obligation is 2723A. The price term is 2723. It says the supplier shall pay the dealer and then list two different items. So, again, if you look at the statute, that's a price term. That's not what inventory you're required to repurchase. But getting back to your point. So who supplies the price term for used equipment besides if it's not in the agreement, it's not negotiated? There's an inspection right. And, again, I think. But who supplies it? Do we supply it? Again, the way it should be, it should be in the agreement. It's not. Not in the statute. And nobody has reached agreement even after by negotiation. So who is to supply it? I guess a court? The parties, and if not the parties, a court. And by virtue of common law? Yes, Your Honor. I believe that's right. And let me just finish your question with respect to certifying the Supreme Court. Again, I think our Supreme Court would struggle with the same issues and conclude that, as they have said, they're not the legislature if there is a fix needed. We understand. As good as we may be, we're only predicting what Delaware Supreme Court would do. Isn't it the best idea just to directly have them make the call? Again, I think given that the issue has been decided and considered, I think that, again, if there's a fix needed, it's not with the courts at this point. Thank you. I appreciate it. Thank you very much. Ms. Hoffman? Just one. The argument against certification is probably two- or three-fold. The argument against certification is Delaware Supreme Court is in no better position than we are, and we're in no better position than anyone else to decide this. It's already been through a district court, a very good district court judge, regardless of the fact that he came out against you. And there's been a whole lot of time that's been spent on this issue, which is probably going to have attorney's fees out the wazoo. So it might seem, you know, let's just tackle it. Maybe it should have stayed in state court to begin with, but let's decide. Your Honor, I think this court is more than capable of tackling this question. I do agree that you're predicting what the Delaware Supreme Court would do. And if you're looking for a precedent that can be used in future disputes, it would be better to have it from the Delaware Supreme Court than our prediction, because the next case could be litigated in Delaware state court, and our precedent wouldn't be binding at all. I think that's probably correct, Your Honor. But I think with respect to the decision itself, first I wanted to answer your question is page 21 of the reply brief that lists Connecticut, Maine, Kentucky, Massachusetts, Oregon, Rhode Island, Vermont, Washington, and West Virginia. That have the statute identical to Delaware? That has the same framework set up as Delaware. And I do not believe, at least at the time I wrote the reply brief. Same framework or identical? The same framework and doesn't have a specific exemption for used equipment. And it doesn't have, like Kentucky, a provision in 2723 that deals with used equipment? Like Delaware does not. Neither one does. Well, a number of states do, like Kentucky. Oh, some states do. Maryland. Some states do, and they expressly include. Oregon, which you just mentioned to me, has a pricing term for equipment that's not new and unused. Right. But, Your Honor, in those states, if you actually look at it, and I take issue with one of the things my counsel said in answer to your question, because you don't, you can't lease to third parties as part of retailing new equipment out there. Once you lease it to a third party, it's not new. And so those cases that look at used equipment, they're generally limited to demos. Was the equipment? Where there may be hours put on. Was the 44 or five pieces of equipment that were subject to this contract, were they new when the contract started? They were new in the sense that they were new. They could be sold as new retail equipment. By the time of repurchase, even the seven pieces we agreed to had hours on it. But those would be demo hours, not leased out to a third party. That puts it in a different category. And, Your Honors, if you'll indulge me further. So you're saying all 45 pieces had demo hours but nothing more when you gave them from, when Terex gave them down to STP? No, I'm not saying that. I'm saying at termination. No, no, I'm talking at the outset. When the contract was put into place. I don't know, Your Honor. We don't know. I don't know the answer to that question. But there is, Your Honors, I just don't believe I got a chance to make the point that there is textual support for Terex's position. Not only in the synopsis, but the modifier in 2720A that requires the equipment remain unsold. The rental equipment is not being held for sale. It is being rented to third parties. The language that says as provided in the statute, there's no provision. This interpretation creates a gap and decides the court should fill it. You're relying on what, 2727A? I'm relying on 2727A that says remain, 2723A that says remains unsold. There's language in 2722. That is the statute that by, that is the section of the statute that imposes the obligation. It's not 2723. 2723 is the one that provides. 2722, 2722 talks about whenever a contract is terminated, the purchase supplier shall purchase the dealer's inventory as provided in the statute. As provided in the statute. And there's no provision for used inventory. So even if the interpretation below and argued by STP is plausible, so is Terex's interpretation. And if you look at the statutes, the canons of statutory construction, Terex's construction makes the statute work together. It gives a compensatory remedy that models the repurchase obligation. The prices are the same for repurchase under the remedy and repurchase under the obligation. It also, it creates a reasonable method that works. It puts in the hand of the commercial party the inventory that the commercial party is best able to deal with. If it's new inventory, the supplier deals with it. Is it correct that Terex did not offer the statutory price for the new equipment? Terex at the time did not know if it was new or not. STP had never told Terex what equipment had been leased. There was an inspection done within 40 days. It made fair market value offer for nine pieces. Later it agreed that seven had not been rented out during the litigation. But a lot of what the plaintiff was talking about. And was Mr. Walsh correct that of the nine pieces or seven, the subset of the nine, that it wasn't the full price? It was fair value at that time because Terex didn't know it was new. And, Your Honor, the statute does not provide. Did you offer the statutory price for the seven pieces of equipment or whatever? Terex did not offer. You said you offered fair market value. Right, because he didn't know what was new. So was that based upon an assumption that it was used? It was based upon the assumption it was used and the condition it was in. So you never did offer the statutory price for the equipment? No, but, Your Honor, the statute provides, specifically provides 90 days and specifically requires the supplier return the equipment. But the price to be paid is 100% of the net cost of all new. Right, and Terex didn't know what was new. It inspected and determined that these nine pieces had a reasonable possibility of being new if they hadn't been leased to new parties. So when ultimately did you find out or determine for yourself? In discovery. In discovery, okay. So, again, I think that the statutory language, not only the word all needs to be paid attention to, but the language in the remedy, the repurchase remedy, that requires proof that the district court failed to include. And a lot of what Mr. Walsh was arguing up here in front of you, this was summary judgment. It may have taken a long time for the decisions to come down, but we never had a trial on any of these issues. And his characterization of fault with respect to negotiations, none of that's been tried. It's their position as to why it happened. Can I ask you one last thing? Yes. How does the fact that you had mentioned that and mentioned it repeatedly in your brief that there was some sort of side agreement about keeping aside some things so they could keep in business, how does that affect our analysis in this case? Well, I think it should affect your analysis, at least on liability. It should have affected the district court's analysis because the statute exempts, does not require you to repurchase equipment the dealer chooses to keep. At termination, a dealer is perfectly free to negotiate for something extra statutory with the supplier. If the dealer chooses to do so, he's not entitled to the statutory rights. And here we had a negotiation going on until repossession. And it was true that Terahex never agreed it was required to repurchase the used equipment, but with respect to the equipment that Terahex had a reasonable belief might be new, it did offer fair value. Did operation of the statute in this case result in a windfall to SDP? It absolutely did because SDP was credited with the price, not only that Terahex paid for those eight pieces of equipment, but for the price of every single piece of equipment. It also was credited with the recourse that Terahex had to pay. And so at the end of the day, it then got almost $6 million of a new inventory price plus interest, plus it had already gotten $3 million in credit by virtue of the sale. So that is a huge windfall for SDP. Thank you. I thank both counsel for very well presented arguments. We'll take the matter under advisement. And I would ask counsel if you would get together with the clerk's office and have a transcript prepared of this oral argument and split the cost, please. Thank you. Well done.